**U.S. BANKRUPTCY COURT**
District of South Carolina

Case Number: **14-03600-jw**
Adversary Proceeding Number: **14-80101-jw**

**ORDER**

The relief set forth on the following pages, for a total of 17 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**06/29/2015**



Entered: 06/30/2015

*John E. Waites*

US Bankruptcy Judge
District of South Carolina

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Julie Gwen Warren,<br><br>                                  Debtor.<br><br>Julie Gwen Warren,<br><br>                                  Plaintiff,<br><br>v.<br><br>Arthur Dill, individually and d/b/a Dill's Used Cars, and Julius Anderson,<br><br>                                  Defendants. | C/A No. 14-03600-jw<br><br>Adv. Pro. No. 14-80101-JW<br><br>Chapter 13<br><br>**ORDER** |

This matter comes before the Court upon the Complaint filed by Julie Gwen Warren ("Debtor") against Arthur Dill, individually and d/b/a Dill's Used Cars, and Julius Anderson ("Defendants"). In the Complaint, Debtor asserts a claim for willful violation of the automatic stay pursuant to 11 U.S.C. § 362(k)(1),[1] based upon the Defendants' alleged post-petition repossession of Debtor's 2005 Pontiac Sunfire ("Vehicle"). Defendants dispute Debtor's claim, asserting that they did not have notice of Debtor's bankruptcy filing, since the Notice of Chapter 13 Bankruptcy Case was sent to Defendant Dill's business address, not to his Post Office Box address, and that, after learning of the bankruptcy filing, they retained the Vehicle on advice of counsel. After considering the pleadings in the matter and testimony at the hearing, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil

---

[1] Further references to the Bankruptcy Code shall be by section number only.

Procedure 52, which is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.[2]

## FINDINGS OF FACT

1. Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code ("Petition") on June 24, 2014.

2. At the time Debtor filed the Petition, she had possession and ownership of the Vehicle. Debtor had previously purchased the Vehicle from Defendant Dill, operating and transacting business under the name Dill's Used Cars, on March 7, 2014. The Vehicle's purchase was financed by Defendant Dill, who received a security interest in the Vehicle.

3. Debtor listed Defendant Dill as a creditor on her mailing matrix filed with the Petition at the following address: Dill's Used Cars, 2442 South Lake Drive, Lexington, South Carolina 29073.[3]

4. Simultaneous with the Petition, Debtor filed a Chapter 13 Plan. The plan proposed to retain the Vehicle by making payments to Dill's Used Cars in the amount of $38.00 per month, along with 5.25% interest until the allowed secured claim is paid in full. The plan was also served by U.S. Mail on June 24, 2015 on Defendant Dill at the 2442 South Lake Drive address.[4]

5. The Bankruptcy Noticing Center mailed the Notice of Chapter 13 Bankruptcy Case to Defendant Dill at the 2442 South Lake Drive address on June 27, 2014.[5]

---

[2] To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are so adopted.
[3] In preparing her petition and mailing matrix, Debtor used the address provided on Defendant Dill's business card, which her roommate, Raymond Baxley, had obtained from Defendant Dill's place of business.
[4] The plan was confirmed on September 25, 2014.
[5] The Certificate of Notice filed by the Bankruptcy Noticing Center on June 28, 2014 indicated that the notice was deliverable to the 2442 South Lake Drive address.

2

6. During the trial, Defendant Dill testified that delivery of mail is undependable at 2442 South Lake Drive address and that his proper mailing address is: Post Office Box 84296, Lexington, South Carolina 29073. Defendant Dill further stated that he informs all of his clients of his proper mailing address.

7. Based upon an alleged default in payments, Defendants repossessed the Vehicle on the evening of July 17, 2014. Defendant Anderson rode with Defendant Dill to Debtor's residence to repossess the Vehicle, and Defendant Dill drove the Vehicle to Defendant Anderson's residence for storage.

8. On the morning of July 18, 2014, at Debtor's request, Debtor's roommate, Raymond Baxley, called Defendant Dill and advised him that Debtor had filed bankruptcy and demanded the return of the Vehicle. Defendant Dill refused to return the Vehicle. Later that same day, Debtor's attorney directly informed Defendant Dill of Debtor's bankruptcy filing by telephone and e-mail and demanded return of the Vehicle.

9. On July 19, 2014, Defendant Dill sent an e-mail to Debtor's attorney wherein he refused to return the Vehicle and stated that the Vehicle belonged to Defendant Anderson and that he "owe[d] it to Mr. Anderson to hold the [Vehicle] at this time for payment in full since [Debtor] violated its terms of sale."[6]

10. On July 21, 2014, Debtor's attorney, through his paralegal, advised Defendant Dill that an adversary proceeding would be filed if the Vehicle was not returned by 5:00 p.m. that day.

11. On July 22, 2014, Defendants came to Debtor's residence to return the Vehicle. Prior to relinquishing control of the Vehicle, Defendant Dill demanded that Debtor pay him

---

[6] Defendant Dill later refuted this statement in his Answer to Debtor's Complaint stating, "Julius Anderson is not a business partner and has never had any ownership in the vehicle in Question a 2005 Pontiac Sunfire." Additionally, at trial, Defendant Dill stated that Defendant Anderson does not have any interest in the Vehicle and that he lied in his July 19, 2014 email response to Debtor's attorney.

3

$235.00 and pay Defendant Anderson $200.00 as a condition of return. After receiving payment from Debtor, Defendants returned the Vehicle to Debtor.

12. Debtor suffers from numerous health-related issues, including seizures and esophageal problems. As a result of the repossession, Debtor missed appointments with a gastroenterologist and neurologist, because she lacked transportation to their offices, which are located approximately 60 miles away from her residence.

13. According to Debtor, she was able to see her neurologist the following Friday, July 25, 2014, but was unable to schedule a make-up appointment with her gastroenterologist for approximately three months. Debtor testified that this lapse in medical treatment caused her severe mental and emotional distress along with discomfort and physical ailments, including difficulty swallowing and digesting food, nausea, and difficulty breathing. However, Debtor did not seek emergency medical treatment for any of her health issues during the three-month period following the repossession.

14. On September 4, 2014, Debtor filed the Complaint, asserting claims against the Defendants for willful violation of the automatic stay under § 362(k)(1).

15. At the hearing, Debtor presented into evidence "Plaintiff's Fee Affidavit," which asserts that Debtor incurred attorney's fees in the total amount of $6,843.00 and costs in the amount of $350.00 in connection with this matter up through trial.

16. Following the trial, the Court provided Defendants an opportunity to respond to the fee affidavit presented into evidence, and Defendants filed an Objection to Attorney's Fees on March 18, 2015.

17. Debtor filed a Response to the Objection to Attorney's Fees on March 27, 2015. Debtor also filed a Supplemental Fee Affidavit, asserting a claim for additional attorney's fees in

4

the amount of $2,750.00 for fees incurred in responding to the Objection to Attorney's Fees. Debtor attached a copy of Debtor's Fee Agreement with Debtor's Counsel as an exhibit to the Supplemental Fee Affidavit.

**CONCLUSIONS OF LAW**

**I. Was the post-petition repossession of Plaintiff's automobile a willful violation of the automatic stay pursuant to § 362(k)?**

Section 362(k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." § 362(k)(1). A willful violation of the automatic stay occurs when a "creditor knows of the pending bankruptcy petition and intentionally attempts to continue collection procedures in spite of it." Weatherford v. Timmark (In re Weatherford), 413 B.R. 273, 285 (Bankr. D.S.C. 2009) (citing Budget Serv. Co. v. Better Homes of Va., Inc., 804 F.2d 289, 292–93 (4th Cir. 1986)). For a debtor to recover damages for an alleged willful violation of the automatic stay, the debtor must establish five elements: "'(1) that a bankruptcy petition was filed, (2) that the debtors are 'individuals' under the automatic stay provision, (3) that the creditors received notice of the petition, (4) that the creditor's actions were in willful violation of the stay, and (5) that the debtor[s] suffered damages.'" Weatherford, 413 B.R. at 284 (quoting In re Sammon, 253 B.R. 672, 679–80 (Bankr. D.S.C. 2000)). Debtor bears the burden of proving these elements. Bolen v. Mercedes Benz, Inc. (In re Bolen), 295 B.R. 803, 807 (Bankr. D.S.C. 2002).

There is a split of opinion among the courts regarding the proper burden of proof to apply in an action for willful violation of the automatic stay. See In re Westman, 300 B.R. 338, 342 n.4 (Bankr. D. Minn. 2003) (applying the preponderance of the evidence standard but noting the minority approach of applying a clear and convincing evidence standard); In re Clayton, 235 B.R.

5

801, 806–07 (Bankr. M.D.N.C. 1998) (noting the difference of opinion among the courts regarding the proper standard of evidence to apply in an action for willful violation of the automatic stay); Hanna Coal Co. v. I.R.S., 218 B.R. 825, 829 (W.D. Va. 1997) (recognizing that "there is a split among the bankruptcy courts as to the weight of the burden a plaintiff [alleging a violation of the automatic stay] must carry"). This Court has historically applied a clear and convincing evidence standard. See In re Romero, C/A No. 10-00837-HB, 2010 WL 4863781 (Bankr. D.S.C. Nov. 23, 2010) (Burris, J.); Taylor v. Credit Cars of Lexington, C/A No. 10-01560-DD, Adv. Pro No. 10-80058, slip op. (Bankr. D.S.C. Aug. 5, 2010) (Duncan, J.); In re Weatherford, 413 B.R. 273, 284 (Bankr. D.S.C. 2009) (Waites, J.); In re Bolen, 295 B.R. at 807 (Waites, J.) (citing Diviney v. NationsBank of Texas (In re Diviney), 211 B.R. 951, 961 (Bankr. N.D. Okla. 1997)); Deleon v. United States (In re Deleon), C/A No. 93-72315-D, Adv. Pro No 95-8130, slip op. (Bankr. D.S.C. Apr. 12, 1996) (Davis, J.), aff'd C/A No. 3:96-1662, slip op. (D.S.C. Oct. 6, 1997) (Perry, J); Lynn v. Automotive Acceptance (In re Lynn), C/A No. 95-70839, Adv. Pro. No. 95-8051, slip op. (Bankr. D.S.C. Mar. 5, 1996) (Davis, J.); Brockington v. Citizens & S. Nat'l Bank of S.C. (In re Brockington), 129 B.R. 68, 70 (Bankr. D.S.C. 1991) (Bishop, J.) (citing In re Zunich, 88 B.R. 721 (Bankr. W.D. Pa. 1988); In re Wagner, 74 B.R. 898 (Bankr. E.D. Pa. 1987); In re Mack, 46 B.R. 652 (Bankr. E.D. Pa. 1985)). In closing arguments, Debtor's Counsel requested that the Court reconsider such standard, arguing that the preponderance of the evidence standard is the approach applied by the majority of the courts addressing the issue. Many of jurisdictions applying the preponderance of the evidence standard have relied on Grogan v. Garner, 498 U.S. 279, 286 (1991), where the Supreme Court stated:

> Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless particularly important individual interests or rights are at stake.

6

After examining the case law regarding this issue and noting that the jurisdictions providing the authority relied upon by this Court in adopting the clear and convincing standard in Brockington appear to have since departed from that approach, the Court finds it appropriate to join the majority by adopting the preponderance of the evidence standard.[7] In adopting this approach, the Court finds the reasoning set forth by the Tenth Circuit in In re Johnson persuasive. See 501 F.3d 1163, 1170–71 (10th Cir. 2007). Nevertheless, for the reasons set forth below, the Court finds that Debtor has met her burden under either standard.

The parties do not dispute that the first two elements are satisfied. Regarding the third element of notice, Defendant Dill argues that he did not receive notice of Debtor's bankruptcy prior to repossessing the Vehicle because notice of the bankruptcy was sent to his business street address and not to the post office box address that he maintains for receiving mail for his business. Defendant Dill testified that mail sent to the business street address is frequently lost by the U.S. Postal Service, and therefore, he notifies all of his clients, including Debtor in this case, to mail all correspondence to his post office box address. However, "courts have generally held that mailing creates a presumption of receipt." In re Perkins, No. 10-03041-JW, 2011 WL 3163294 at *2

---

[7] See e.g., In re Johnson, 501 F.3d 1163 (10th Cir. 2007) (applying preponderance of the evidence standard for an action for a willful violation of the automatic stay and abrogating Diviney v. NationsBank of Texas (In re Diviney), 211 B.R. 951 (Bankr. N.D. Okla. 1997)); In re Moore, 488 B.R. 120 (D. Haw. 2013) (applying preponderance of the evidence standard); In re Angelo, 480 B.R. 70 (Bankr. D.Mass. 2012) (same); In re Wingard, 362 B.R. 892 (W.D. Pa. 2008) (same); In re Collett, No. 13-8033, 2014 WL 2111309 (B.A.P. 6th Cir. May 21, 2014) (same); In re Carter, 502 B.R. 333 (B.A.P. 8th Cir. 2013) (same); In re Heghmann, 316 B.R. 395 (B.A.P. 1st Cir. 2004) (same); In re Velasquez, No. 12-10670, 2015 WL 2215455 (Bankr. D.N.M. May 11, 2015) (same); In re Torres, No. 11-10862-WIL, 2014 WL 4929062 (Bankr D.Md. Sept. 30, 2014) (same); In re Rivera, 511 B.R. 6 (Bankr. D.P.R. 2014) (same); In re Dean, No. 1:11-bk-05680MDF, 2012 WL 4634291 (Bankr. M.D. Penn. Oct. 1, 2012) (same); In re Seaton, 462 B.R. 582 (Bankr. E.D.Va. 2011) (same); In re Mosher, 432 B.R. 472 (Bankr. D.N.H. 2010) (same); In re Spinner, 398 B.R. 84 (Bankr. N.D.Ga. 2008) (same); In re Payne, 387 B.R. 614 (Bankr. D.Kan. 2008) (same); In re Baldwin, 2007 WL 4414870 (Bankr. S.D.Fl. Dec. 14, 2007) (same); In re Gossett, 369 B.R. 361, 375 (Bankr. N.D.Ill. 2007) (same); In re McCarthy, 350 B.R. 820, 826 (Bankr. N.D. Ind. 2006) (same); In re Westman, 300 B.R. 338, 342 (Bankr. D. Minn. 2003) (same); In re Clayton, 235 B.R. at 807 n.2 (Bankr. M.D.N.C. 1998) (same); In re Sharon, 200 B.R. 181, 199 (Bankr. S.D. Ohio 1996), aff'd, 234 B.R. 676 (B.A.P. 6th Cir. 1999) (same).
.

7

(Bankr. D.S.C. Feb. 8, 2011) (citing Fed. R. Bankr. P. 9006(e)); see also Collier on Bankruptcy ¶ 9006.11 (16th Ed. 2014) (noting that courts have held that "Rule 9006(e) creates a rebuttable presumption that the paper mailed was received by the party to whom it was sent") (citing Greyhound Lines v. Rogers (In re Eagle Bus. Mfg., Inc.), 62 F.3d 730 (5th Cir. 1995); Moody v. Bucknum, 951 F.2d 204, 217 (9th Cir. 1991); In re Longardner & Assocs., Inc., 855 F.2d 455 (7th Cir. 1988), cert. denied, 489 U.S. 1015 (1989); In re Eagle-Picher Indus., Inc., 175 B.R. 943, 946 (Bankr. W.D.Ohio 1994)). This presumption may only be overcome by evidence that the mailing was not actually accomplished and the mere denial of receipt is insufficient. See Perkins, 2011 WL 3163294 at *2. No evidence was presented to indicate that Debtor did not properly mail the Notice of Chapter 13 Bankruptcy Case to Defendant Dill or that the mail was returned as undeliverable. Debtor presented into evidence a Certificate of Service from the Bankruptcy Noticing Center that indicated the Notice of Chapter 13 Bankruptcy Case was deliverable to Defendant Dill at the 2442 South Lake Drive address. While Defendant Dill denied receiving notice of the bankruptcy case at that address, his testimony was only that mail was not reliably delivered at the 2442 South Lake Drive address, and he did not state that it could not be delivered to that address. Accordingly, the Court finds that Defendant Dill has not presented evidence sufficient to overcome the presumption that he received proper notice and thus is presumed to have had notice of the bankruptcy case at the time he repossessed the Vehicle on July 17, 2014.[8]

Furthermore, even if notice had not been received by Defendant Dill as of July 17, 2014, it is undisputed that Defendant Dill received actual notice of the bankruptcy on the morning of July 18, 2014, via telephone call from Debtor's roommate and via telephone call and email from Debtor's attorney. Despite receiving such notice, Defendant Dill retained possession of Debtor's

---

[8] In weighing the testimony and evidence, the Court finds that Defendant Dill's denial of notice lacks credibility.

8

Vehicle and did not return the Vehicle to Debtor until July 22, 2014. See Bolen, 295 B.R. at 807 (holding that "the continued retention of collateral that was admittedly wrongly repossessed postpetition constitutes a willful violation of the automatic stay when the creditor has notice of the pending bankruptcy").

Finding that the element of notice is satisfied, the Court must also determine whether Defendant Dill intentionally continued his collection attempts notwithstanding such notice. Better Homes, 804 F.2d at 293. Defendant Dill argues that his actions were not a willful violation of the automatic stay because his retention of Debtor's Vehicle was based on advice from counsel, and therefore the Court should find that only a technical violation occurred. Defendant Dill's argument lacks merit. A creditor's conduct is the determinative factor for whether or not a violation of the automatic stay has occurred, not the creditor's mental state. Citizens Bank of Md. v. Strumpf, 37 F.3d 155, 159 (4th Cir. 1994) ("The Fourth Circuit has determined that to constitute a willful violation under § 362(h) [now § 362(k)], the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay."), rev'd on other grounds, 516 U.S. 16 (1995). In other words, a creditor's belief that the automatic stay does not apply to his conduct is immaterial to the question of whether a stay violation has occurred, even if such belief is based on advice of counsel. In re Banks, 521 B.R. 417, 425 (Bankr. M.D. Ga. 2014); see also Gordon Props. LLC v. First Owners' Ass'n of Forty Six Hundred Condominium, Inc. (In re Gordon Props., LLC), 515 B.R. 454 (Bankr. E.D. Va. 2013) ("Advice of counsel is not a defense to a stay violation although it may be a factor in fashioning a remedy or making an award of damages."); In re Stancil, 487 B.R. 331 (Bankr. D.D.C. 2013) (finding that reliance on advice of counsel that no stay arose was not a defense under § 362(k)).

The evidence at trial demonstrates that Defendant Dill intentionally retained the Vehicle in violation of the automatic stay for four days after receiving notice of the Debtor's bankruptcy filing and then required payment from Debtor as a condition of the return of the Vehicle. See Weatherford, 413 B.R. at 287; Legrand v. Dep't of Hous. & Urban Dev. & I.R.S. (In re Legrand), No. 98-01921-W, Adv. Pro. No. 98-80166-W, 1999 WL 33486087 at *3–4 (Bankr. D.S.C. Mar. 8, 1999) (finding that the failure to rectify a violation of the stay once notified of the bankruptcy filing is a willful violation of the automatic stay); Ard v. Auto Acceptance (In re Ard), C/A No. 95-70839-D, Adv. Pro. No. 95-8051-D, slip. op. at 2 (Bankr. D.S.C. Mar. 5, 1996) (finding that a creditor who wrongly repossessed a vehicle post-petition willfully violated the automatic stay when he retained the vehicle despite notice of the bankruptcy case). Based on this evidence, the Court concludes that Defendant Dill's actions constituted a willful violation of the automatic stay.

**II.  What is the amount of damages Debtor suffered as a result of Defendant's willful violation of the automatic stay?**

Debtor seeks actual damages and punitive damages for Defendant Dill's willful violation of the automatic stay. Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." As a direct and proximate result of Defendant Dill's conduct, Debtor testified that she suffered actual damages of the loss of use of the Vehicle for four days and was required to pay Defendant Dill $235.00 and Defendant Anderson $200.00 as a condition for the return of the Vehicle.[9] Debtor presented into evidence an estimate for the rental of a car similar to the Vehicle for four days in the amount of $111.96 and copies of the negotiated checks improperly required by and paid to Defendant Dill

---

[9] Defendant Dill testified that at the time he repossessed the Vehicle he "needed money" because he owed Defendant Anderson money for a loan he had made to Defendant Dill unrelated to the Vehicle, and it appears that he requested Debtor to pay $200.00 to Defendant Anderson for the purpose of repaying that loan.

10

and Defendant Anderson. Based on this evidence, the Court finds that Debtor is entitled to an award of actual damages in the amount of $546.96. See Miller v. Willing (In re Willing), C/A No. 04-15104-W, Adv. Pro. No. 05-80032-W, slip op. (Bankr D.S.C. May 11, 2005) (awarding damages for loss of use of a vehicle based on a rental quote even though the debtor did not rent a substitute vehicle).

Debtor also testified that she experienced emotional distress and physical suffering as a result of the repossession of the Vehicle, because the loss of her Vehicle caused her to miss two doctor's appointments, including an appointment with her gastroenterologist to have her esophagus "stretched," which she was unable to reschedule for approximately 60 days. Due to the lapse in medical treatment, Debtor testified that she experienced physical ailments, including difficulty swallowing and digesting food, nausea, and difficulty breathing, which occurred because her esophagus was not "stretched" as originally scheduled. She also testified that she was scared due to her difficulties with swallowing and breathing during that time. Based on Debtor's credible and convincing testimony, the Court finds that an award of damages for emotional distress and physical ailments in the amount of $500.00 is appropriate in this case.

Having concluded that Defendant Dill is liable for a willful violation of the automatic stay, the Court finds that Debtor is also entitled to an award of reasonable attorney's fees and costs in this case pursuant to § 362(k)(1). At trial, Debtor's counsel submitted into evidence "Plaintiff's Fee Affidavit," wherein Debtor's Counsel asserted that Debtor incurred $6,843.00 in attorney's fees and $350.00 in costs as the result of the prosecution of this matter. The Court granted Defendants an opportunity to respond to the Affidavit following the trial. Defendants filed an Objection to Attorney's Fees, wherein they concede that if the Court finds a willful violation of the automatic stay, then Debtor would be entitled to attorney's fees; however, they argued that the

11

amount of attorney's fees incurred by Debtor is excessive. In response to Defendants' Objection, Debtor's Counsel filed a Response to the Objection and a Supplemental Fee Affidavit, wherein he asserted that Debtor incurred an additional $2,750.00 in attorney's fees for the purpose of responding to Defendants' Objection to Attorney's Fees. In total, Debtor now seeks $9,593.00 in attorney's fees in connection with this adversary proceeding.

The Court determines the amount of reasonable attorney's fees to be awarded by applying the lodestar method: determining the number of hours reasonably spent on the case and multiplying that number by a reasonable hourly rate. Robinson v. Equifax Info. Servs., 560 F.3d 235, 243 (4th Cir. 2009). Debtor asserts that her counsel spent 27.3 hours working on her case up through the trial and 11 hours responding to Defendants' Objection to Attorney's Fees, for a total of 38 hours at the rate of $250.00 per hour. The Court has reviewed Plaintiff's Fee Affidavit, Supplemental Fee Affidavit, and Fee Agreement and finds that the billing rate for Debtor's Counsel at $250.00 per hour is reasonable. The rate requested appears to be at or below the prevailing market rate in South Carolina for similar work. Defendants argue that the fees should be reduced because the total amount claimed is excessive and the billing records attached to the fee affidavits reflect that Debtor's counsel used improper "block billing," where he included multiple services for a single time entry.[10]

To determine what constitutes a reasonable number of hours and rate, this Court is guided by the following twelve factors:

---

[10] Defendants further argue that attorney's fees should be denied because the fee agreement was not submitted into evidence at trial, and during her testimony at trial, Debtor was unable to recall the nature of her fee agreement with Debtor's Counsel. However, Debtor testified that she was required to pay attorney's fees for her representation in this matter and subsequently provided a signed copy of her Fee Agreement with Debtor's Counsel as an attachment to the Supplemental Fee Affidavit, which indicates a hybrid contingency fee arrangement where Debtor's Counsel is entitled to obtain fees at his hourly rate if the claim results in the recovery of funds or may elect to receive 50% of the total amount of recovery. Debtor's contingency fee agreement with Debtor's Counsel does not prevent an award of reasonable attorney's fees.

12

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 243–44 (citing Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)). Considering these factors, the Court finds a reasonable fee award in the amount of $8,200.00, plus costs in the amount of $350.00.[11] In making this determination, the Court finds that the following factors weigh in favor of a reduction of fees: the novelty and difficulty of the questions raised, the customary fee for like work, the amount in controversy and the results obtained, and attorney's fees awards in similar cases. This fee award is at or above the amount awarded by the undersigned in prior cases with similar facts.[12] See e.g., In re Smith, C/A No. 05-05537-JW, slip op. (Bankr. D.S.C. Dec. 19, 2005) (awarding $2,186.00 in attorney's fees); Young v. Elite Fin. Servs. (In re Young), C/A No. 04-10260, Adv. Pro. No. 04-80353, slip op. (Bankr. D.S.C. Sept. 15, 2005) (awarding $9,027.00 in attorney's fees in a matter that was "vigorously litigated" by a sophisticated creditor); In re Miller, C/A No. 04-15104-W, Adv. Pro. No. 05-80032-W, slip op. (awarding $2,350.00 in attorney's fees).[13] The Court further observes that the relatively small

---

[11] The Court notes that Debtor's Counsel's use of block billing for a number of his time entries impairs the Court's ability to determine the reasonableness of the time spent and is disfavored. See Uhlig v. Shirley, 895 F.Supp.2d 707 (D.S.C. 2012) (finding a 60% reduction in attorney's fees was appropriate due to counsel's use of block billing). While the time spent by Debtor's Counsel defending his fee claim is justifiably included in the fee application, the Court believes that an additional fee request that comprises nearly a third of the total fees requested is unreasonable under the circumstances of this case. See Prandini v. National Tea Co., 585 F.2d 47, 53 (3rd Cir. 1978).

[12] The award of attorney's fees and costs in this case is explicitly authorized by § 362(k)(1), and therefore not limited by the Supreme Court's ruling in Baker Botts L.L.P. v. ASARCO LLC, No. 14-103, 2015 WL 2473336 (Jun. 15, 2015) (holding that the Bankruptcy Code does not permit bankruptcy courts to award attorney's fees to counsel or other professionals employed by the bankruptcy estate pursuant to § 330(a)(1) for work performed in defending a fee application in the court).

[13] See also Bolen, 295 B.R. at 812 (awarding $5,000.00 in attorney's fees); Rupe v. Providian Nat'l Bank, C/A No. 02-15468-W, Adv. Pro. No. 03-80042, slip op. (Bankr. D.S.C. Jun. 20, 2003) (awarding $2,400.00 in attorney's fees

amount of actual damages does not prohibit an award of attorney's fees in this matter. See Duby v. United States (In re Duby), 451 B.R. 664, 676 (B.A.P. 1st Cir. 2011) (noting that "attorney's fees are actual damages under 11 U.S.C. § 362(k)(1)" and affirming a fee award for a stay violation where plaintiff recovered no other damages).

Debtor also seeks an award of punitive damages, which may be awarded pursuant to § 362(k) in appropriate circumstances. Considering Defendant Dill's retention of the Vehicle for four days after being notified of Debtor's bankruptcy case and his requirement of payment from Debtor in exchange for the return of the Vehicle, the Court finds that punitive damages in the amount of $2,000.00 are appropriate in this case in order to deter similar future violations.

**III.  Defendant Anderson is not liable for willful violation of the automatic stay.**

Debtor also asserts a claim for willful violation of the automatic stay against Defendant Anderson, an individual who assisted Defendant Dill with the repossession of the Vehicle on July 17, 2014 and the return of the Vehicle on July 22, 2014. At the outset, the Court notes that Julius Anderson is not a creditor of Debtor and was not listed on Debtor's Schedule D or mailing matrix, and therefore was not provided with notice of Debtor's bankruptcy filing. Notwithstanding this fact, Debtor seeks to hold Defendant Anderson liable for willful violation of the stay under principles of agency and partnership or joint venture.

At trial, both Defendant Anderson and Defendant Dill testified that Defendant Anderson was merely a personal friend of Defendant Dill and had no business relationship with Defendant Dill or Dill's Used Cars.[14] Defendant Anderson testified that he did not charge Defendant Dill for

---

for willful violation of automatic stay); Edmonson v. Arrowood (In re Edmonson), C/A No. 02-03848-W, Adv. Pro. No. 02-80193-W, slip op. (Bankr. D.S.C Jul. 30, 2002) (awarding $1,350.00 in attorney's fees).

[14] While Defendant Dill indicated in correspondence to Debtor's counsel that the Vehicle actually belonged to Defendant Anderson and that Defendant Anderson had purchased the Vehicle with Defendant Dill at auction, during his testimony at trial, Defendant Dill admitted that he lied when making this statement and that Defendant Anderson in fact had no interest in the Vehicle and has never purchased a vehicle with Defendant Dill.

14

his assistance in repossessing or returning the Vehicle. He further testified that he did not learn of Debtor's bankruptcy filing until after July 22, 2014, and that it was Defendant Dill who required Debtor to tender payment of $200 to Defendant Anderson in exchange for return of the Vehicle.[15]

The Court finds that Debtor has not provided sufficient evidence to allow the Court to impose liability upon Defendant Anderson based upon principles of agency, partnership, or joint venture.[16] However, even if an agency, partnership or joint venture relationship had been established, the Court would nevertheless be unable to hold Defendant Anderson personally liable for a willful violation of the automatic stay because sufficient evidence was not presented indicating that Defendant Anderson had notice of Debtor's bankruptcy filing prior to July 22, 2014. Without establishing the essential element of notice, Debtor cannot assert a claim for willful violation of the automatic stay against Defendant Anderson. See Weatherford, 413 B.R. at 285 (finding no willful violation of the stay by a creditor where there was insufficient notice of the bankruptcy case at the time of the creditor's collection attempt).

---

[15] Defendant Dill testified that he owed Defendant Anderson money from a personal loan Defendant Anderson had given him. The Court finds that Defendant Dill's testimony that Debtor voluntarily tendered payment to he and Defendant Anderson was not credible.

[16] "Agency is the fiduciary relationship resulting from the manifestation of consent by one person to another that the other shall act on behalf of and subject to the control of the first, and of consent by the other so to act." Arabi Gin Co. v. Plexus Cotton, Ltd. (In re Joseph Walker & Co.), 522 B.R. 165, 195 (Bankr. D.S.C. Sept. 25, 2014) (internal citation and quotation omitted). Under South Carolina law, "a 'partnership' is an association of two or more persons to carry on as co-owners a business for profit." S.C. Code Ann. § 33-41-210. A "joint venture" is "an association of two or more persons to carry out a single business enterprise for profit" and relations among joint venturers are governed by partnership law. Tompkins v. Comm'r, 97 F.2d 396 (4th Cir. 1938); Tiger, Inc. v. Fisher Agro, Inc., 391 S.E.2d 538 (S.C. 1989); Few v. Few, 122 S.E.2d 829, 834 (S.C. 1961) ("Practically the only difference between a 'joint adventure' and a 'partnership' is that a partnership is ordinarily for the transaction of a general business of a particular kind, while a joint adventure relates to a single transaction.")

**CONCLUSION**

Based on the foregoing, it is hereby

ORDERED that judgment be entered against Defendant Dill in the total amount of $11,596.96, comprised of $546.96 for loss of use of the Vehicle and improperly required payments, $500.00 for pain and suffering and emotional distress, $8,200.00 in attorney's fees,[17] $350.00 in costs, and $2,000.00 in punitive damages; and

IT IS FURTHER ORDERED that Debtor's request for relief under § 362(k)(1) against Defendant Anderson is denied.

**AND IT IS SO ORDERED**.

---

[17] In awarding attorney's fees based upon an hourly charge, the Court contemplates that method as the basis for compensation. Any election of an alternative method for compensation must be approved by the Court unless it reduces the attorney's fees and costs.